IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JAMES BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-1869-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| WASHINGTON COUNTY, a governmental entity; JAMES LOONEY, an individual; HENRY JONES, an individual; and DOES 1-10, | ) ) ) ) ) | |
| Defendants. | ) | |

    Geordie Duckler
    5331 S. W. Macadam Avenue, Suite 299
    Portland, Oregon 97239

        Attorney for Plaintiff

    William G. Blair
    Senior Assistant County Counsel
    155 N. First Avenue, Suite 340-MS 24
    Hillsboro, Oregon 97124-3072

        Attorney for Defendants

Page 1 - OPINION AND ORDER

KING, Judge:

This action resulted from the execution of a search warrant at the home of plaintiff James Brooks during which officers seized a male German shepherd and a female pit bull and her puppies. Brooks alleges several common law and constitutional torts based on the event. Before the Court is Defendants Washington County and Looney's Motion for Summary Judgment (#31). For the reasons below, I grant the motion and dismiss all claims.

**FACTS**

Brooks and defendant James Looney knew each other prior to the incident with the search warrant. Brooks was Looney's immediate supervisor when both worked for the King City police department. Brooks gave Looney several reprimands for incompetent work. Brooks also wrote a termination letter for Looney and put it in Looney's personnel file, but Brooks never gave the letter to Looney. Looney never saw or heard of the letter prior to this litigation. He was terminated from King City during his probation period in May 2002 by the current Chief. Brooks had been terminated from King City before that date.

Looney then became employed as a Deputy Sheriff for defendant Washington County in August 2002 and was assigned to routine patrol in parts of Washington County, including Sherwood.

Looney was never given an explanation from King City for his termination. When Looney was hired by Washington County, King City told his background investigator that the department lacked the financial resources to keep Looney.

Brooks and Looney did not communicate after leaving King City. Looney characterizes their interaction as a supervisor/subordinate relationship without arguments. Brooks states that

Looney involuntarily left the job as a result of his incompetence. Brooks also believes that Looney was extremely angry at Brooks and blamed Brooks for Looney's termination. Brooks bases this belief on three facts: (1) Looney is working for Washington County; (2) Brooks was told that Looney was terminated; and (3) the termination letter was in Looney's personnel file.

Looney was assigned by his supervisor to resolve the problem of Brooks' pit bull that had been running at large and chasing animals and people. Looney informed his supervisor that the dog belonged to his former boss at King City. The supervisor had Looney continue on the assignment except that a second deputy would sign any citations. Looney checked with Animal Services and a senior assistant county counsel about the relevant dog ordinances and the procedure for obtaining a search warrant.

On May 21, 2004, Looney applied to the Hon. Stephen Price, Washington County Circuit Court Judge, for a warrant to search the premises at 26795 SW Chehalem Station Rd., Sherwood, which is the home of Brooks, and to seize a female pit bull and her puppies. Looney volunteered not to handle the warrant because of his former relationship with Brooks. Looney's commander wanted him to continue because the Brooks home was in Looney's patrol district.

Looney supported the application for the warrant with his own affidavit. It stated that a pit bull coming from that address had attacked patrol vehicles or officers on three occasions and had attacked a neighbor, Henry Jones, and his family on Jones' property on multiple occasions. Looney had confirmed that Brooks had no dogs licensed with the County. Looney filled out three citations for Brooks for dangerous dog, failure to prevent running at large, and failure to prevent acts of nuisance. The citations had been mailed to Brooks via certified mail but were

returned as unclaimed. The affidavit recounted other unsuccessful attempts to have Brooks or his attorney call to discuss the pit bull.

The affidavit did not state that Brooks was involved in the arrest of Jones' son-in-law, possibly giving Jones a motive for retaliation against Brooks. The affidavit also did not state that Looney had a troubled relationship with Brooks at King City. Looney did orally tell Judge Price when he applied for the warrant that Brooks had been his Chief at King City.

Judge Price signed the warrant. The warrant was executed on May 27, 2004 by a team led by Washington County Sheriff's Office ("WCSO") Sergeant Gene Moss and including WCSO Corporal Marzilli, WCSO Deputy Looney, Beaverton Police Sergeant Preim, Tualatin Police Detective Winfield, and Washington County Animal Services Officers Rohweder and Locke. Sergeant Moss decided on the size of the team. Three officers were in patrol uniforms and two others had civilian clothes with coats saying "POLICE" on the back. No one had a fully automatic weapon but all wore bullet-proof vests. Looney carried a Taser and Marzilli carried a bean-bag shotgun. Moss carried a 12-gauge shotgun as required by WCSO policy if officers are deployed with less-than-lethal weapons as the primary means of self-defense. Locke carried a tranquilizing dart gun resembling a rifle. Another team member carried a rifle.

The property consists of 1.3 acres with a mobile home in which Brooks lives. Access is through a gate and up a gravel driveway between 100 to 150 feet from the gate. The mobile home is screened from the road by a stand of arbor vitae. The gate is secured by three locks which were locked when the officers arrived. There is no intercom or signaling device at the gate to alert the occupants of the mobile home.

After arriving at the gate, Sergeant Moss tried to get a phone number to call the home but was unable to do so. The officers cut the locks off the gate, removed some C-clamps, and drove the caravan of three vehicles up the driveway. One vehicle was a marked patrol car with lights and siren operating, one was an unmarked SUV, and one was an Animal Services vehicle outfitted to cage and transport dogs. Before and after coming up the driveway, the officers used the public address system on the patrol car to state that they had a search warrant and the occupants should come out with their hands up.

From another part of the property outside the fence, Brooks heard the sirens and saw the vehicles come up the driveway to his home. Instead of approaching the officers, Brooks hid in a bush and called his lawyer.

Locke saw Looney get out of the first vehicle. An adult German shepherd dog advanced toward Looney, growling and displaying its teeth. Locke believed that the dog was likely to attack. On his own initiative, Locke fired a tranquilizing dart into the dog's hindquarter. The dog first appeared surprised, then made a lethargic retreat into the bushes. Locke located the German shepherd, impounded it, and transported it to the animal shelter in Hillsboro when the group left. Animal Services policy requires that its officers impound dangerous dogs and hold dogs shot with tranquilizing darts so that they can be examined by veterinary medical personnel and observed for adverse side effects.

Brooks' lawyer arrived and helped remove the pit bull from the home. Locke took custody of the pit bull described in the warrant and also took it to the animal shelter. He recognized it as the same dog he had previously seen running at large.

Brooks' lawyer got the pit bull back later that day. The German shepherd was returned a few days later.

Brooks believes that Looney issued the citations to harass him. Brooks further believes that Looney entered his property with an excessive show of force with an intent to harm Brooks. The citations were all dismissed by the County just before the scheduled hearing.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

## DISCUSSION

I.  Illegal Search

Brooks alleges that Washington County violated his Fourth and Fifth Amendment property rights by executing a baseless search warrant. The County moves for summary judgment against the claim because Brooks does not explain what County policy or practice caused the constitutional deprivation. Brooks contends that the County's decision to adopt the course of action against Brooks is sufficient.

In Monell v. Department of Social Services of New York, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978), the Court held that the word "person" in § 1983 includes municipalities and other local governing bodies which may be liable under any of three theories: (1) if an employee was acting pursuant to an expressly adopted official policy; (2) if an employee was acting pursuant to a longstanding practice or custom; or (3) if an employee was acting as a final policymaker. Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004).

A policy of omission regarding the supervision of employees can be a policy or custom creating municipal liability under *Monell*, "but only if the omission reflects a deliberate or conscious choice to countenance the possibility of a constitutional violation." Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1194 (9th Cir. 2002) (internal quotation omitted), cert. denied, 537 U.S. 1106 (2003).

I do not see any facts under which Brooks can argue that a jury could find that a *Monell* claim exists. He has not pointed to a policy or custom that caused his alleged constitutional violation. There was no decision by a final policymaker for the County to adopt the course of action. Likewise, there was no omission reflecting a deliberate choice to countenance a possible constitutional violation. Accordingly, I grant summary judgment and dismiss the first claim under Section 1983 alleged against the County.

II.  Wrongful Initiation of Civil Proceeding

Brooks alleges that defendants proceeded wrongfully by obtaining and executing the search warrant and by prosecuting the citations against him.

The elements of a claim for the wrongful initiation of a civil proceeding are: (1) the institution and completion of a legal proceeding; (2) the termination of that proceeding in

Page 7 - OPINION AND ORDER

plaintiff's favor; (3) the lack of probable cause to bring the proceeding; (4) malice or an improper purpose; and (5) damages. Checkley v. Boyd, 198 Or. App. 110, 132, 107 P.3d 651 (2005).

For purposes of this tort, "probable cause means that the person initiating the civil action reasonably believes that he or she has a good chance of prevailing–that is, he or she subjectively has that belief and the belief is objectively reasonable." Roop v. Parker Northwest Paving Co., 194 Or. App. 219, 238, 94 P.3d 885 (2004). If the facts are not in dispute, whether probable cause existed is a question of law. Id. at 239.

Brooks contends that a factual dispute concerning probable cause forecloses summary disposition. He does not explain which facts are in dispute and I am aware of none.

I will first address the search warrant. Property that is possessed to commit an offense is subject to search and seizure. ORS 133.535(3). An offense is defined as conduct for which a sentence to a term of imprisonment or to a fine is provided by state law or by law or ordinance of a political subdivision of the state. ORS 161.505. Here, the warrant was obtained to seize evidence of four offenses, specifically, violations of infractions under Washington County Code §§ 6.04.050 (dog at large), 6.04.060 (keeping a dangerous dog), 6.04.080 (failing to prevent acts of nuisance), and 6.04.140 (failure to license a dog). The Oregon Supreme Court has recognized that search warrants may be used to seize evidence of conduct other than crimes:

> Nothing in the constitutional guarantee, however, limits warrants to evidence of crimes. There are other purposes for which lawmakers may think that compelled access to places or effects, even seizure of persons, may be required besides punishing someone for a crime.

State of Oregon v. Weist, 302 Or. 370, 377, 730 P.2d 26 (1986) (approved use of search warrant for evidence of the motor vehicle code infraction of unlawful registration of a motor vehicle).

Page 8 - OPINION AND ORDER

The warrant is supported by Looney's affidavit which provides facts that, if proven, would support a conclusion that the county code sections had been violated. Most importantly, a Circuit Court Judge signed the warrant, indicating his determination that probable cause was established. Similarly, I also conclude as a matter of law that defendants had probable cause to obtain the search warrant. Thus, the warrant cannot be the basis of the tort of wrongful initiation of civil proceedings.

The analysis does not differ for the infraction citations. Based on Looney's affidavit, I conclude as a matter of law that defendants had probable cause to issue the citations. The fact that the citations were dismissed prior to hearing does not compel the conclusion that probable cause did not exist when they were issued.

I also want to address Brooks' contention that the judge issuing the warrant should have been given more information about possible bias on the part of Looney and Jones. The parties do not brief the issue in any depth. The closest analogy I know of is in the criminal setting, which I at times must address in the context of a motion to suppress.

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that, under certain circumstances, a defendant is entitled to an evidentiary hearing in which he can attack the veracity of a search warrant affidavit or challenge the omission of material facts in the affidavit. If, after a hearing, the defendant establishes by a preponderance of the evidence, that the false statements or omissions were intentional or reckless, and the remaining material in the affidavit is insufficient to support a finding of probable cause, the search warrant is invalidated and the evidence suppressed. Franks, 438 U.S. at 156.

Applying that analysis here, the addition to the affidavit of the prior relationship between Brooks and Looney and the possible bias of Jones, both as recounted by Brooks, does not lead to the conclusion that the affidavit would no longer support a finding of probable cause. The affidavit contains too many instances of attacks suffered by people other than Looney and Jones when the pit bull was running at large. Even taking Looney's and Jones' possible biases into account, the affidavit more than supports a finding of probable cause that the infractions had been committed.

Accordingly, I grant the motion for summary judgment and dismiss the claim for the wrongful initiation of civil proceedings.

III.  Trespass to Real Property and to Chattels

Brooks alleges a trespass claim for the entry onto his property and a trespass to chattels claim for the tranquilizing of his German shepherd.

Defendants did not trespass on Brooks' land because they entered under the authority of the search warrant, which I concluded above was valid. See Eugene v. Silva, 198 Or. App. 101, 107, 108 P.3d 23 (2005) (intrusion onto residential curtilage is deemed trespass unless the entry is privileged or is done with consent).

The tort of trespass to chattels is based on the disturbance of the plaintiff's possession, which is less than is required for the tort of conversion. Morrow v. First Interstate Bank of Oregon, N.A., 118 Or. App. 164, 167, 847 P.2d 411 (1993). In determining the seriousness of the interference in a conversion analysis, the following factors are considered: (1) the extent and duration of the exercise of dominion or control; (2) the intent to assert a right in fact inconsistent with the other's right of control; (3) good faith; (4) the extent and duration of the resulting

interference with the other's right of control; (5) the harm done to the chattel; and (6) the inconvenience and expense cause to the other. Beall Transport Equipment Co. v. Southern Pacific, 196 Or. App. 696, 701, 64 P.3d 1193 (2003), aff'd, 339 Or. 534, 103 P.3d 654 (2005).

Defendants had obtained a judicially approved warrant prior to entering the property. The dog suffered no permanent damage and was returned within a few days. In the opinion of the Animal Services officer, the dog was about to attack Looney and had to be stopped. There is no evidence to the contrary. I conclude that no fact issue exists and that no jury could find defendants liable for this tort. Consequently, I grant summary judgment against this claim.

IV.   Intentional Infliction of Emotional Distress

Brooks alleges that defendants' conduct was an extraordinary transgression of the bounds of socially tolerable conduct that is sufficient for liability for the intentional infliction of emotional distress.

The tort of intentional infliction of emotional distress contains the following elements:

> (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

McGanty v. Staudenraus, 321 Or. 532, 543, 901 P.2d 841 (1995). Intent is defined to mean "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct." Id. at 550 (emphasis omitted). The nature of the relationship between the parties affects the type of conduct that is considered actionable. Id. at 548.

"Conduct that is merely rude, boorish, tyrannical, churlish and mean [is insufficient to be actionable, and] . . . insults, harsh or intimidating words, or rude behavior ordinarily [do not] result in liability even when intended to cause distress." Watte v. Edgar Maeyens, Jr., 112 Or. App. 234, 239, 828 P.2d 479, 481 (1992) (quoting Hall v. The May Dept. Stores, 292 Or. 131, 135, 637 P.2d 126, 129 (1984)). In addition, Oregon cases which have allowed claims for intentional infliction of emotional distress to proceed typically involve acts of psychological and physical intimidation, racism, or sexual harassment. See Babick v. Oregon Arena Corp., 333 Or. 401, 413, 40 P.3d 1059 (2002) (defendant's release of intoxicated and violent concertgoers who had been detained by plaintiffs presented a threat of imminent physical harm that was presumed grave); Kraemer v. Harding, 159 Or. App. 90, 976 P.2d 1160 (1999) (continued accusations that a school bus driver was a child sex abuser after multiple investigations concluded that no inappropriate conduct occurred); Wheeler v. Marathon Printing, Inc., 157 Or. App. 290, 974 P.2d 207 (1998) (co-worker continued harassment including sexual remarks even after plaintiff attempted suicide); Lathrope-Olson v. Dept. of Transportation, 128 Or. App. 405, 408, 876 P.2d 345 (1994) (calling a Native American woman a squaw, telling her that a squaw was supposed to walk behind her man, stating that all women were good for was between their legs, locking her out of the work van in the rain and snow, and threatening to push her into the path of oncoming vehicles); Franklin v. Portland Community College, 100 Or. App. 465, 787 P.2d 489 (1990) (supervisor called an African-American male by the name "boy," issued false reprimands, shoved him, locked him in an office, and suggested that he apply elsewhere for employment).

Whether conduct constitutes an extraordinary transgression of the bounds of socially tolerable conduct is a question of law.  Harris v. Pameco Corp., 170 Or. App. 164, 171, 12 P.3d 524 (2000).

Defendants here did no more than obtain a valid warrant, execute it, and tranquilize a German shepherd that was about to attack one of the deputies.  I conclude as a matter of law that the conduct is not an extraordinary transgression of the bounds of socially tolerable conduct.  I grant summary judgment against this claim.

V.    Negligent Retention, Supervision and Entrustment

Brooks alleges that the County breached its duty to ensure that its employee, Looney, acted responsibly in his role as an officer and employee of the County.  Brooks also alleges that the County should have known that Looney had dangerous propensities that constitute a hazard to the general public.

There is no evidence in the record that Looney had dangerous propensities.  He obtained and executed a valid warrant.  Thus, Looney committed no act for which the County failed to properly supervise him.  I grant summary judgment against this claim.

VI.   Respondeat Superior Liability for Negligence

Brooks concedes the County's arguments against this claim.  I grant summary judgment against it.

VII.  Defendant Henry Jones

Brooks alleged the claims for wrongful initiation of a civil proceeding and the intentional infliction of emotional distress against defendant Henry Jones.  Jones' counsel filed a Notice of Appearance but never filed an Answer and did not join in this summary judgment motion.  For

the reasons explained above, these two claims cannot proceed to trial against Jones either. I grant summary judgment against them in favor of Jones.

## CONCLUSION

Defendants Washington County's and Looney's Motion for Summary Judgment (#31) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this ___11th___ day of January, 2006.

                                                   /s/ Garr M. King
                                                   Garr M. King
                                                   United States District Judge